# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

LUSH NDOU,

    Petitioner,

v.                                                   Case No. 2:26-cv-00220-KWR-GJF

KRISTI NOEM, *in her official capacity as*
*Secretary of the Department of Homeland Security*,
PAMELA BONDI, *in her official capacity as*
*Attorney General of the United States*,
TODD LYONS, *in his official capacity as*
*Acting Director of the United States Immigration*
*and Customs Enforcement*,
MARY DE ANDA-YBARRA,
*in her official capacity as Field Office Director of*
*the El Paso Field Office of U.S. Immigration and*
*Customs Enforcement, Enforcement and Removal Operations*,
DORA CASTRO, *in her official capacity as*
*Warden of the Otero County Processing Center*,

    Respondents.

## MEMORANDUM OPINION AND ORDER GRANTING PETITIONER'S HABEAS PETITION

**THIS MATTER** comes before the Court on Petitioner's Petition for Writ of Habeas Corpus (Doc. 1). Having reviewed the parties' pleadings, exhibits, and the relevant law, the Court finds that the Petition is well-taken, and therefore, is **GRANTED**.

## BACKGROUND

Petitioner Lush Ndou is a citizen of Albania who entered the United States on a tourist visa in October 1994. Doc. 1 ¶ 15. In December 1994, he submitted an application for asylum, withholding of removal, and protection under the Convention Against Torture Act ("CAT"). *Id.* ¶ 16. In 1997, an immigration judge ("IJ") denied Petitioner's asylum application, withholding of

removal, and CAT claim and ordered Petitioner removed. *Id.* ¶ 17. Petitioner was granted voluntary departure in lieu of a deportation order, which became an order of removal in October 1997 when petitioner did not provide proof of departure. *Id.*; Doc. 11-1 ¶¶ 5–6 (ICE Officer Declaration). Petitioner timely appealed to the Board of Immigration Appeals ("BIA"), which dismissed his appeal in July 1998. Doc. 1 ¶ 18.

On or about June 17, 2025, Immigration and Customs Enforcement ("ICE") officers arrested Petitioner following his release from arrest for state criminal charges, which were later dismissed. *Id.* ¶ 5, 19; Doc. 11 at 2 (Respondents' Answer). On July 11, 2025, Petitioner filed a motion to reopen removal proceedings and a request to stay his removal. Doc. 11 at 2–3; Doc. 12 at 3 (Petitioner's Reply). On January 28, 2026, the BIA denied his motion and request. Doc. 11-1 at 3; Doc. 12 at 3.

Petitioner has remained in custody since June 2025. Doc. 1 ¶ 19. As of the date of the Petition's filing, he is detained at the Otero County Processing Center in New Mexico. *Id.* He challenges his lawfulness of his detention and his conditions of confinement. *Id.* ¶¶ 38, 40, 48.

## LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). A federal court may grant a writ of habeas corpus to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

**DISCUSSION**

Petitioner asserts that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Specifically, he argues that his continued detention is unlawful under 8 U.S.C. § 1231 and *Zadvydas* because his removal is no longer reasonably foreseeable. Respondents argue that Petitioner fails to meet his burden under *Zadvydas* because his removal period reset when the BIA denied his motion to reopen removal proceedings.[1]

For the reasons discussed below, the Court finds that Petitioner's removal period did not reset in January 2026. Thus, his detention is governed by post-detention-period authority. Since his continued detention has extended beyond the six-month presumptively reasonable period, and there is no significant likelihood of removal in the reasonably foreseeable future, the Court will grant habeas relief.

**I.        Petitioner's removal period did not reset when the BIA denied his motion to reopen.**

Pursuant to the Immigration and Nationality Act ("INA"), the Government must remove a noncitizen within a 90-day removal period. § 1231(a)(1)(A). This removal period begins "on the latest of the following:

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

---

[1] Respondents do not argue that Petitioner must exhaust administrative remedies before seeking habeas relief, and the Court will not address the issue of exhaustion *sua sponte*.

*Id.* § 1231(a)(1)(B). A removal order becomes "administratively final" when the order has been affirmed by the BIA or the time for seeking review has expired. 8 U.S.C. § 1101(a)(47)(B); *Riley v. Bondi*, 606 U.S. 259, 267 (2025). During the removal period, detention is mandatory. § 1231(a)(2)(A).

Here, the issue is whether Petitioner's removal period under § 1231(a)(1)(B)(i) began on January 28, 2026, when the BIA denied his motion to reopen. Respondents argue that Petitioner's detention cannot be unconstitutional because he is still within the removal period and subject to the 90-day detention requirement of § 1231(a)(2)(A). Doc. 11 at 5. Petitioner disagrees, stating that his removal order became administratively final decades ago and the BIA never granted a stay of the removal proceedings when he filed his motion to reopen; therefore, his detention is governed by post-removal-period detention authority. Doc. 12 at 3–4.

The Court agrees with Petitioner that his detention does not fall within the removal period, although for a different reason than the one put forward by Petitioner. The parties focus on whether a stay was issued. But the motion to reopen was not under judicial review; it was before the BIA, an administrative body. Accordingly, the BIA's decision could not trigger a new removal period under § 1231(a)(1)(B)(ii). Instead, Petitioner's removal period is determined by the date that his removal order became "administratively final."

Turning to § 1231(a)(1)(B)(i), the Court begins with the plain language of the statute. There it states that the removal period begins "the date the order of removal becomes administratively final." The provision is clear that the removal period is only triggered by "the order of removal," and not any other type of order. And the finality of a removal order is determined by statute as "a determination by the Board of Immigration Appeals affirming such order" or "the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration

4

Appeals." *Id.* § 1101(a)(47)(B); *Riley*, 606 U.S. at 267 (concluding that an "order of removal" has the "same characteristics" as an "order of deportation").

Respondents do not point to any authority to support that, if a petitioner requests to reopen removal proceedings, it will undo the finality of a removal order—turning the date of denial into the new "administratively final" date under § 1231(a)(1)(B)(i). And the Supreme Court has stated that orders that do not disturb or affect the validity of the final order are not "final orders of removal" under 8 U.S.C. § 1252. *Riley*, 606 U.S. at 268–69 (pointing to their decisions where the Court found that CAT orders and withholding-only proceedings, respectively, did not impact the finality of the removal orders to support its conclusion that a final administrative review order was a "final order of removal"). Since § 1252 simply determines when a petitioner may seek judicial review of final orders of removal, which could then trigger a new removal period under § 1231(a)(1)(B)(ii), the Court does not find a reason to depart from the Supreme Court's reasoning in *Riley* as it pertains to § 1231(a)(1)(B)(i).

Here, the denial of a motion to reopen does not affect the validity of a final order of removal. A motion to reopen may not be filed until "a final administrative order of removal" has been issued. *Id.* § 1229a(c)(7)(C)(i). The granting of a motion to reopen depends on whether a petitioner can establish that she was eligible for relief before an "administratively final order" was entered. 8 C.F.R. § 1003.2(c)(1). And the regulations governing immigration proceedings specifically state that noncitizens are still subject to § 1231, which governs detention during and beyond the removal period, unless a motion to reopen is granted. 8 C.F.R. § 241.4(b)(1).

Additionally, decisions by multiple circuit courts support the Court's determination that the denial of a motion to reopen does not impact the removal period under § 1231(a)(1)(B)(i). *See Naranjo-Castillo v. INS*, 145 F.3d 16, 1998 WL 243700, at *2 (10th Cir. 1998) (unpublished table

5

decision) (noting that, in a case where petitioner filed a motion to reopen, BIA's decision was "administratively final" when petitioner waived the right to appeal before an IJ in 1995); *Diouf v. Mukasey*, 542 F.3d 1222, 1230 (9th Cir. 2008) (concluding that removal period began when removal order became final; later challenges to denial of motions to reopen had no effect on removal period date); *Forde v. U.S. Att'y Gen.*, 257 F. App'x 167, 169 (11th Cir. 2007) (citing *Stone v. INS*, 514 U.S. 386, 405 (1995) ("The finality of a removal order is not affected by the filing of a motion to reopen or reconsider.").

Accordingly, Petitioner's removal period could not reset when the BIA denied his motion to reopen in January 2026. His order of removal was administratively final decades ago. Since Petitioner has been detained since June 2025, and Respondents do not argue that his removal period has been extended beyond 90 days,[2] the Court will consider whether Petitioner's continued detention is unlawful.

### II. Petitioner's continued detention violates 8 U.S.C. § 1231 under *Zadvydas*.

Upon expiration of the initial removal period, Respondents may continue to detain the noncitizen, but not indefinitely. *Johnson v. Guzman Chavez*, 594 U.S. 523, 528–29 (2021); § 1231(a)(6); *Zadvydas*, 533 U.S. at 699. Continued detainment for six months is "presumptively reasonable." *Zadvydas*, 533 U.S. at 701. After six months, if the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," Respondents must then rebut the noncitizen's showing. *Id.* Given a sufficient showing by Respondents, the noncitizen may be confined "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Although *Zadvydas*

---

[2] For example, Respondents do not argue that Petitioner's failure to comply extended his removal period beyond 90 days. See Doc. 11-1 at 3.

dealt with a noncitizen deemed removable after gaining admission to the United States, its holding applies to noncitizens who are deemed inadmissible. *Clark v. Martinez*, 543 U.S. 371, 386 (2005); *see also Morales-Fernandez v. INS*, 418 F.3d 1116, 1123–24 (10th Cir. 2005) (finding that, in *Clark v. Martinez*, the Supreme Court expanded *Zadvydas* to apply to inadmissible noncitizens).

Here, Respondents only rely on their assertion that Petitioner's removal period reset on January 28, 2026, making his detention presumptively reasonable until July 2026. Doc. 11 at 5. As discussed above, Respondents' calculation of Petitioner's removal period is not supported by law. It is undisputed that Petitioner has been detained for more than eight months, so his detention has extended beyond the six-month presumptively reasonable mark under *Zadvydas*. Therefore, the Court will consider whether Petitioner has met his burden and whether Respondents have failed to rebut Petitioner's showing.

Petitioner demonstrates that there is not a significant likelihood that he will be removed in the foreseeable future. Despite his detention since June 2025, Petitioner alleges that ICE has been—and will continue to be—unable to secure a travel document for his removal because of the lack of recorded identity documents for him in Albania due to the deficient recordkeeping following its split from the Soviet Union and the subsequent political and administrative transitions. Doc. 1 ¶¶ 3, 37. According to Petitioner, Respondents have not produced any evidence that his removal is reasonably foreseeable. Doc. 12 at 3. Specifically, Respondents have not submitted "any proof of travel document issuance, consular cooperation, scheduled removal flights, or any concrete removal arrangements." *Id.*

Respondents have produced little evidence to rebut Petitioner's showing. The filed declaration outlines few steps taken towards removal since July 2025. Despite the knowledge that a stay had not been granted by the BIA, *see* Doc. 11-1 ¶ 15, Respondents made almost no effort to

facilitate Petitioner's removal during the seven months that his motion to reopen and request for stay were pending. Although Respondents completed pre-removal checks and a file was "sent to exotic travel component for final arrangements" in February, Doc. 11-1 at 3, there is no indication that Albania is cooperating and coordinating with DHS to facilitate Petitioner's departure. There is no indication that Petitioner will be removed to Albania or to any other country. No travel document has been issued. *See Khungbik v. Carter*, No. 26-3016-JWL, 2026 WL 656930, *2 (D. Kan. Mar. 9, 2026). And Respondents fail to rebut Petitioner's assertion that it is unlikely that a travel document will be issued due to the lack of identity documentation for individuals like Petitioner who were born in Albania during the 1960s. Despite the standing order to alert the Court to any changes that would affect the outcome of the Petition, Doc. 3 at 3, Respondents have not provided any further updates in their progress to remove Petitioner.

In sum, the completion of a pre-removal check and an assurance that "ERO continues to actively pursue arrangements to Albania," Doc. 11-1 at 3–4, do not amount to a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. Good faith efforts are not enough. *See Zadvydas*, 533 U.S. at 702. For the above reasons, the Court will order that Respondents must release Petitioner from custody subject to reasonable conditions of supervision.

### III.     The Court will not rule on Petitioner's allegations regarding treatment in detention.

Petitioner raises a claim regarding his conditions of confinement.  Petitioner contends that the detention center has repeatedly denied him with necessary medical care for his heart condition, tooth pain, and back pain. Doc. 1 ¶¶ 21–22, 45–48. Alarmingly, Petitioner states that he had to extract his own tooth after being denied access to a dentist. *Id.* ¶ 46. For these reasons, Petitioner alleges that Respondents violated his Fifth Amendment right to due process. *Id.* ¶ 48. Although

the Court is concerned by these allegations, it will not address the merits of this conditions of confinement claim.

First, the claim appears to be moot since the Court is granting Petitioner habeas relief. Second, claims related to conditions of confinement are properly raised under a civil rights action, not a habeas corpus petition. The basic purpose of a § 2241 habeas proceeding is to permit a person in custody to attack the legality of custody, and the "traditional function of the writ is to secure release from illegal custody." *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). Therefore, a challenge to "the fact or duration of" confinement must be brought through a habeas corpus petition, while a challenge to the conditions of confinement must be brought through a civil rights action under 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). *Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012); *Rael v. Williams*, 223 F.3d 1153, 1154 (10th Cir. 2000). Petitioner appears to raise these detention-related concerns primarily as a request to expedite these proceedings as he does not request relief on the basis of his conditions of confinement. *See* Doc. 1 at 14. Therefore, Petitioner's allegations regarding inadequate treatment fall outside the scope of the Court's habeas review. Should Petitioner wish to pursue this claim, he would need to file a separate civil rights action.

### IV. Petitioner may file an Equal Access to Justice Act application to pursue reasonable costs and fees.

Petitioner requests that the Court award attorney's fees and costs under the Equal Access to Justice Act ("EAJA"). Doc. 1 at 14. Respondents do not address Petitioner's request for fees and costs. Considering recent Tenth Circuit precedent and the relevant procedure, the Court finds

that it may consider Petitioner's request for attorney's fees and costs provided that Petitioner follows proper EAJA procedure.

The EAJA provides for the following procedure:

> [A] court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Finding that "'civil action' unambiguously refers to any legal action brought to enforce a private or civil right, or to redress a private wrong," the Tenth Circuit held that the EAJA "unambiguously authorize[s] fees in habeas actions challenging immigration detention." *Daley v. Ceja*, 158 F.4th 1152, 1159, 1166 (10th Cir. 2025).

A fee award is required if (1) the plaintiff prevails, (2) Respondents' position was not "substantially justified," and (3) there are no special circumstances rendering an award of fees unjust. *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007) (quoting 28 U.S.C. § 2412(d)(1)(A)). While fees are authorized, the EAJA requires that Petitioner, "within thirty days of final judgment in the action, submit to the court an application for fees and other expenses," and an allegation demonstrating that "the position of the United States was not substantially justified." 28 U.S.C. § 2412(d)(1)(A), (B). Upon filing this application, Respondents must justify its position in any underlying proceedings and district court litigation. *See Hackett*, 475 F.3d at 1170.

Since the Court grants Petitioner's habeas relief, should Petitioner continue to pursue costs and fees, Petitioner is instructed to file an EAJA application following the appropriate procedure.

## CONCLUSION

In sum, the Court finds that Petitioner's continued detention runs afoul of 8 U.S.C. § 1231(a)(6) and *Zadvydas*. Accordingly, the Court finds that Petitioner is entitled to habeas relief.

**IT IS THEREFORE ORDERED** that Petitioner's Petition for Writ of Habeas Corpus (**Doc. 1**) is hereby **GRANTED** for reasons described in this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that Petitioner be released from custody by 5:00 p.m. on March 12, 2026, subject to reasonable conditions of supervision. Respondents are directed to file certification that Petitioner has been released within **three (3) days**.

\_\_\_\_\_/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE